[Crim. No. F2357. Fifth Dist. June 15, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
BUDDY LOFTIS, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

¹Part II is not published as it does not meet the standards for publication contained in rule 976(b), California Rules of Court.

230

## COUNSEL

Frank Di Sabatino, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gregory W. Baugher and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MARTIN, Acting P. J.**—Appellant was found guilty after trial by jury of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) with the personal use of a firearm (Pen. Code, § 12022.5) and being under the influence of a controlled substance, phencyclidine (PCP) (Health & Saf. Code, § 11550, subd. (b)). He appeals.

### STATEMENT OF FACTS

*A. Facts Related to Waiver of Miranda Rights.*[2]

On December 11, 1982, Bakersfield police arrested appellant at approximately 1:30 p.m. Bakersfield Police Officer Don Martin transported appellant to jail. Shortly before 2 p.m., Martin interrogated appellant. Before questioning, Martin advised appellant of his constitutional rights by reading

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

a standard Miranda warnings card. Appellant did not appear to have any difficulty understanding his rights. He understood his rights and would talk to Martin about the incident.

At the time of the interrogation, appellant exhibited symptoms of PCP influence. A nystagmus[3] test showed a positive reaction. Appellant's speech was slurred, at first he paused for a long time before answering questions, and he made facial grimaces. However, his answers were responsive and appropriate to those questions. Martin testified he had no difficulty in understanding appellant's answers. During the interrogation, Martin asked appellant if he was still "high" and appellant responded, "somewhat high, but not as much as earlier in the afternoon."

Appellant told Officer Martin he had purchased $20 to $30 worth of "Sherman" cigarettes (cigarettes laced with PCP) from one "Reggie" in the vicinity of Ralston and Lakeview Avenue in Bakersfield. Appellant said he frequented this area to buy PCP. He started smoking the "Sherms" around noon or 1 p.m. and became very high. While standing on the corner, someone took $100 in cash from his pocket. When appellant came down from his high, he wanted to find out who had taken his money. Appellant said he drove a black and gray Catalina automobile to his house on Lake Street. There he obtained a dark blue .22 caliber revolver and some bullets and returned to the corner to find his money. To his knowledge, he did not fire the gun. He kept both the gun and ammunition in his right front pocket.

At the hearing on the defense motion to suppress appellant's statement, counsel stipulated if appellant testified, he would say he did not recall giving a statement to Officer Martin.

### B. Facts Related to the Offenses.

During the early afternoon hours of Saturday, December 11, 1982, 14-year-old Robert Garza and his cousin Joseph Chavira went to a liquor store in the vicinity of Ralston and Lakeview Avenue to purchase milk for their grandmother. They left the store and walked by the Cotton Club bar when they heard what sounded like two or three cap-gun shots. They looked in the direction of the sounds and saw appellant standing 15 to 20 feet away in the middle of Ralston Street. He was pointing a gun east toward Lakeview.

---

[3]Nystagmus is defined as "a rapid involuntary oscillation of the eyeballs occurring normally with dizziness during and after bodily rotation or abnormally after injuries (as to the cerebellum or the vestibule of the ear)." (Webster's Third New Internat. Dict. (1961) p. 1553.)

Appellant then turned the gun towards Garza and fired, hitting the boy in the upper left thigh. Garza told Chavira, who was standing next to him, that he had been shot. Chavira saw the bullet hole in Garza's pants and realized appellant was shooting live ammunition. Garza and Chavira ran behind the liquor store.

Chavira called the police from a pay telephone while Garza and another man watched for appellant. After the telephone call, Garza and Chavira noticed appellant lying down in the middle of Lakeview Avenue. As two police officers on motorcycles responded to the scene, a group of men picked appellant up and carried him to the sidewalk.

Bakersfield Police Officers Tam K. Hodgson and Ralph Wenzinger were at an accident scene when they heard a radio dispatch concerning a shooting incident at Ralston and Lakeview Avenue. The two officers responded immediately and saw a group of people pulling appellant to the northwest corner of the intersection, in front of the Cotton Club. One of the people volunteered to take appellant home. Because of the reported shooting, Officer Hodgson directed the people to leave appellant and move away. When appellant faced the officer, Hodgson noticed appellant had a blank stare, stood very rigidly, and seemed disoriented. At that point, Robert Garza pointed out appellant as the person who had shot him. Neither Garza nor Chavira previously knew appellant.

Officer Hodgson directed appellant to come to him. Appellant did not respond and Hodgson asked him twice if he could see him. Appellant finally responded, began walking toward Hodgson, and stopped six feet away. Hodgson asked appellant if he had a gun. Appellant said yes and began to reach toward his right side. Hodgson ordered appellant to move his hand away from his body, to walk to a street sign on the corner and to take hold of the sign. Officer Wenzinger testified appellant, in an apparent daze, reached out to grab the pole although he was several feet away from it. Appellant finally took hold of the sign and Hodgson conducted a pat-down search for the firearm. When told there was no gun, appellant remarked, "I guess I don't have it now."

Based upon his training and experience, Hodgson described the symptoms of a person under the influence of PCP. These symptoms include facial grimacing, vertical and lateral nystagmus, disjointed thinking, bizarre behavior, unawareness of time and place, muscular rigidity, and a mint odor about the breath. Officer Hodgson explained various stages of PCP intoxication, identifying them as the high/active/peaking stage, followed by a subdued stage, then an aware and responsive stage. According to Hodgson, a person in the last stage may accurately recall what transpired in previous

stages, although certain elements may be distorted. However, each user has a different reaction to the drug. The officer indicated people under the influence of PCP generally have recall in the last stage unless the PCP intoxication causes a comatose state. He concluded appellant was under the influence of PCP based upon the involuntary vertical movement of his eyes and other symptoms. Officer Hodgson testified appellant was in the peaking stage when first observed in the middle of Lakeview Avenue but was in the subdued stage at the time of his arrest.

Appellant was arrested for being under the influence of PCP and for assault with a deadly weapon. Officer Martin responded to the scene at about 1:30 p.m. to transport appellant to the Bakersfield Police Department. He conducted a pat-down search and found eight rounds of .22 caliber ammunition in appellant's right front jacket pocket. After arriving at the police department, Officer Martin advised appellant of his *Miranda* rights. Appellant waived his rights and described his version of the events of that afternoon as previously recited. Police obtained a urine sample from appellant after the interrogation. A criminalist with the Kern County Sheriff's Department analyzed the sample and found it contained PCP.

## C. Defense.

Appellant testified on his own behalf. He left home the morning of December 11, 1982, for a drive in his beige 1972 Plymouth.[4] He drove down Lakeview Avenue to the Cotton Club liquor store. About 11 a.m. or 11:30 a.m. he was behind the liquor store drinking beer, smoking cigarettes and talking with six or seven other people. Appellant denied smoking a dark "Sherm" cigarette. He denied knowingly ingesting PCP.

Appellant testified one of the other men behind the liquor store was tall, wore a brown shirt and had a small caliber weapon concealed in his pants. Appellant did not recall possessing a weapon on December 11. He testified he blacked out and did not remember anything that occurred from the time he was talking behind the liquor store until the time he awoke in a holding tank at the county jail. Appellant did not recall the shooting, the circumstances of his arrest, or his conversation with Officer Martin. He had never seen Ralph Garza or Joseph Chavira prior to his arrest. Appellant denied knowing anyone named "Reggie."

I

Appellant contends his statements to Officer Martin were the involuntary result of his PCP intoxication rather than the product of his rational intellect

---

[4]According to appellant, neither he nor anyone in his family owned a black and gray Catalina.

and free will. Respondent submits appellant's waiver of *Miranda* rights was effective and his statements were completely voluntary.

■    The use in a criminal prosecution of involuntary confessions constitutes a denial of due process of law under both the federal and state Constitutions. (*Lego* v. *Twomey* (1972) 404 U.S. 477, 483 [30 L.Ed.2d 618, 623, 92 S.Ct. 619]; *People* v. *Haydel* (1974) 12 Cal.3d 190, 197 [115 Cal.Rptr. 394, 524 P.2d 866].) Under federal case law the voluntariness of a confession must be proved by a preponderance of the evidence. (*Lego* v. *Twomey, supra,* 404 U.S. 477, 489 [30 L.Ed.2d 618, 627].)    ■    The California Supreme Court has held the prosecution must prove the voluntariness of a confession beyond a reasonable doubt.[5] A reviewing court is under a duty to examine the uncontradicted facts to determine independently whether the trial court's conclusion of voluntariness was properly found. With respect to conflicting testimony, the reviewing court accepts that version of events which is most favorable to the People, to the extent it is supported by the record. (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].)

Numerous cases have addressed the effect of drugs and other substances upon the voluntariness of confessions. (See Annot., Sufficiency of Showing that Voluntariness of Confession or Admission Was Affected by Alcohol or Other Drugs (1983) 25 A.L.R.4th 419.)    ■    Where a suspect has received medication from or at the direction of law enforcement authorities after arrest (demerol, scopolamine, phenobarbitol, thorazine, etc.), subsequent admissions and confessions have generally been suppressed as involuntary upon the premise that the suspect's will to resist was overcome and he was unable to think rationally or comprehend the seriousness of his predicament. (*Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205]; *In re Cameron* (1968) 68 Cal.2d 487 [67 Cal.Rptr. 529, 439 P.2d 633]; *People* v. *Johnson* (1973) 32 Cal.App.3d 988 [109 Cal.Rptr. 118].) However, where the suspect has voluntarily ingested alcohol or a controlled substance at some point in time preceding arrest and, taking into account all of the surrounding circumstances, the evidence shows that a defendant understood and was able to intelligently respond to police questioning, the reviewing court will find a knowing and intelligent waiver, especially where medical or other expert testimony is presented as to the effect of the substance on the defendant's ability to

---

[5]On May 17, 1984, the California Supreme Court granted review in *In re Randy H.* (Crim. No. 23717) to determine whether Proposition 8 (the "Victims' Bill of Rights") (Cal. Const., art. I, § 28) abrogates the rule admitting confessions only upon a showing of voluntariness beyond a reasonable doubt.

comprehend his rights and the consequences of waiving those rights. (*People* v. *Taylor* (1980) 112 Cal.App.3d 348 [169 Cal.Rptr. 290]; *Townsend* v. *Sain* (1963) 372 U.S. 293 [9 L.Ed.2d 770, 83 S.Ct. 745]; *People* v. *Watson* (1977) 75 Cal.App.3d 384 [142 Cal.Rptr. 134].)

In *People* v. *Houle* (1970) 13 Cal.App.3d 892 [91 Cal.Rptr. 874], the Second District Court of Appeal affirmed defendant's conviction of possession of amphetamine. Defendant contended he did not intelligently waive his *Miranda* rights at the time he confessed to the charge. He based that contention solely on the uncontradicted evidence he was under the influence of amphetamine at that time. Although the record disclosed he was under the influence of the drug, it also contained evidence he understood the *Miranda* warning. The court rejected appellant's contention, relying upon *People* v. *Bauer* (1969) 1 Cal.3d 368, 374 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398], certiorari denied (1970) 400 U.S. 927 [27 L.Ed.2d 187, 91 S.Ct. 190].

In the instant case the prosecution presented the testimony of Officers Hodgson and Martin to show the effect of PCP upon appellant's ability to exercise his rational intellect and free will. Hodgson's description of PCP intoxication and its effects is confirmed by medical studies. (See, e.g., Luisada, Phencyclidine in Substance Abuse: Clinical Problems and Perspectives (Lowinson & Ruiz, edits. 1981) pp. 209-232.)

The interrogating officer, Don Martin, was of the opinion appellant was under the influence of PCP at the time of advisal and waiver of his *Miranda* rights. Appellant told Officer Martin he was "somewhat high" but not as much as earlier in the afternoon when appellant clearly manifested signs of PCP influence. Although appellant initially paused for a long time after hearing Martin's questions and would then slur his answers, according to Martin, appellant's answers were rational and directed to the questions. This testimony was not contradicted by appellant or other witnesses present at the time of his arrest.

The critical question is whether the accused's abilities to reason, comprehend, or resist were so disabled that he was incapable of free, rational choice. Examination of the totality of the circumstances surrounding the interrogation here supports the trial court's determination of a knowing and intelligent waiver beyond a reasonable doubt. Appellant's testimony was insufficient to establish as a matter of law that he was incapable of intelligently and voluntarily waiving his rights.

## II[6]

. . . . . . . . . . . . . . . . . . . . . . . .

Affirmed.

Hamlin, J., and Van Auken, J.,* concurred.

---

[6]See footnote 1.

*Assigned by the Chairperson of the Judicial Council.