[No. B020562. Second Dist., Div. Four. Feb. 17, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
TROY LEE GREEN, Defendant and Appellant.

**COUNSEL**

Fred Kilbride, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gary Hahn and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

McCLOSKY, J.—A jury found defendant Troy Lee Green guilty of voluntary manslaughter (Pen. Code, § 192, subd. (a)), a lesser and necessarily included offense of murder (Pen. Code, § 187) with which he was originally charged. The jury further found true the allegation that defendant personally used a deadly and dangerous weapon, to wit, a knife, during the commission of the killing (Pen. Code, § 12022, subd. (b)). Pursuant to Welfare and Institutions Code section 1731.5, subdivision (c), the trial court ordered that defendant serve his state prison sentence at the California Youth Authority.

Defendant's sole contention on appeal is that the trial court committed prejudicial error when it denied his motion to exclude from evidence his tape-recorded extrajudicial statement and admitted it over objections that his "purported waiver of his right to counsel was not knowledgeable and that it was produced by coercion." We shall affirm.

On February 19, 1985, defendant, who was then age 18 years and 10 months, voluntarily went to the police station after learning that the police wanted to talk to him and that Harlan Wilson whom he had stabbed four days earlier had died. Defendant was accompanied to the police station by one or both of his parents.

In his statement to Detective Victor Pietrantoni, defendant admitted that he had stabbed the victim but claimed that he had done so in self-defense. Defendant stated that the victim had pulled a knife and after an ensuing struggle defendant had managed to turn the knife against the victim and stab him. The prosecution established defendant's criminal liability for the killing by introducing evidence which tended to demonstrate that the exculpatory details of defendant's statement were false.

On appeal, defendant maintains that his tape-recorded statement was inadmissible as evidence in his criminal trial because he did not knowingly

waive his right to counsel and that the "waiver" he did make in that regard was the product of coercion. He concedes, however, that he went to the police station for the specific purpose of informing the police that he stabbed the victim in self-defense. Defendant does not attack the validity of his waiver of his right to remain silent.

The transcript of defendant's tape-recorded statement reflects that defendant was properly advised of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. When Detective Pietrantoni asked defendant if he wanted to give up his right to speak to an attorney and have him present during questioning, the following colloquy transpired:

" 'TROY: What do you mean by that now?

" 'DETECTIVE: Okay, what that means is, if you want to go talk to an attorney, first, contact an attorney and ask him what's going on, you have the right to do that. In which case we take you here and process you here and you would be able to call up an attorney and deal with him, okay? If you want to talk to me now, you are going to have to talk to me here and now without the presence of an attorney. Okay. Now it's your choice.

" 'TROY: I don't really know anything about this but—but you say I can talk to an attorney—what's that got to do with it? Bout me talking to an attorney?

" 'DETECTIVE: You obviously know that you are a suspect in the case—right—

" 'TROY: Um-hum (Yes).

" 'DETECTIVE: Okay, now I'm not going to stay here and tell you—you don't need an attorney. I'm not allowed to do that. I can't give you any advice. What I'm going to tell you is as I explained to you before I read you your rights. If you decide to talk to me. . . .

" 'TROY: I don't need no attorney, I'll just talk to you man-to-man.

" 'DETECTIVE: Okay. . . You see it's good you feel that way, but it's my job to explain . . . . The court requires that I explain and it's for your own benefit.

" 'TROY: I don't need now [*sic*] attorney.

" 'DETECTIVE: Okay, so you do wish to give up the right to an attorney and have him present during questioning?

" 'TROY: Yes.' "

At the conclusion of the hearing to exclude defendant's tape-recorded statement, the trial court found that defendant voluntarily went to the police station so that he could explain to the police what happened and that the defendant intelligently, voluntarily and honestly waived his *Miranda* rights. The trial court further decided that defendant wanted to tell his side of the story, that he did so without hesitation, that he did not desire the aid of counsel and that there was no deception.

In *People* v. *Jimenez* (1978) 21 Cal.3d 595, 608 [147 Cal.Rptr. 172, 580 P.2d 672], the California Supreme Court held that under California law the prosecution is required to prove the voluntariness of a confession beyond a reasonable doubt.

Presently pending before this state's high court is the question of whether the Truth-in-Evidence provision of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)) nullifies the standard enunciated by the *Jimenez* court by permitting the prosecution to prove voluntariness of a confession by the less stringent federal constitutional preponderance of the evidence standard established in *Lego* v. *Twomey* (1972) 404 U.S. 477, 488 [30 L.Ed.2d 618, 627, 92 S.Ct. 619] and reaffirmed in *Colorado* v. *Connelly* (1986) 479 U.S. 157, [93 L.Ed.2d 473, 485, 107 S.Ct. 515]. (See *People* v. *Markham* (1986) 188 Cal.App.3d 99 [224 Cal.Rptr. 262] review granted June 26, 1986 (Crim. 25539); *People* v. *Fuller & Alexander* [nonpub. opn.] review granted Oct. 2, 1986 (Crim. 25813); *People* v. *Campos* (1986) 192 Cal.App.3d 1606 [228 Cal.Rptr. 470] review granted Oct. 2, 1986. (Crim. 25816); *People* v. *Tijerina* [nonpub. opn.] review granted Oct. 2, 1986. (Crim. 26049).)

Because we conclude that defendant's tape-recorded statement was voluntary beyond a reasonable doubt, it follows that it was necessarily voluntary by a preponderance of the evidence. We therefore deem it unnecessary to decide which standard of proof is currently applicable in this state.

■ "In California, before a confession can be used against a defendant, the prosecution has the burden of proving that it was voluntary and not the result of any form of compulsion or promise of reward." (*People* v. *Jimenez, supra,* 21 Cal.3d at p. 602.) "The totality of the circumstances must be examined to determine whether the confession was the product of a rational intellect and a free will." (*People* v. *Dingle* (1985) 174 Cal.App.3d 21, 27 [219 Cal.Rptr. 707].)

■ As the reviewing court it is our duty to examine the uncontradicted facts of this case in order to make an independent determination of whether the trial court properly concluded that defendant's extrajudicial statement was voluntary. (*People* v. *Jimenez, supra,* 21 Cal.3d at p. 609; *People* v. *Loftis* (1984) 157 Cal.App.3d 229, 235 [203 Cal.Rptr. 590].)

■ "Threats, express or implied, of heavy punishment, accompanied by promises or suggestions of leniency or other advantage if a confession is given, render a statement inadmissible." (*People* v. *Hinds* (1984) 154 Cal.App.3d 222, 238 [201 Cal.Rptr. 104].)

■ Defendant maintains that Detective Pietrantoni's advisement that if he wanted to confer with an attorney prior to questioning, he would be able to call one after he was booked, amounted to a threat. Defendant's "use an attorney, go to jail" argument is specious. When asked, "So you let Mr. Green know that if he wanted to speak to an attorney he was going to be processed and be going to jail before he would speak to an attorney?", Detective Pietrantoni replied, "Well, he may have drawn that conclusion. What I was telling Mr. Green is exactly what was going to happen. I gave him the choice if he preferred to have an attorney, that's fine, our conversation was over."

Detective Pietrantoni's statement to defendant was simply an explanation of the procedure that would be taken if defendant exercised his right to speak with counsel. A criminal defendant does not have a constitutional right to meet and confer with counsel before being booked by the police.

Detective Pietrantoni did not either overtly or covertly try to dissuade defendant from exercising his right to counsel, nor did he expressly or impliedly tell defendant that he would have to wait an inordinate time in jail before he could confer with an attorney or that he would not be processed and would be able to go home after the interview if he spoke to them without counsel. Detective Pietrantoni informed defendant that he was a suspect in this case, and defendant unequivocally acknowledged his status as a suspect. ■ The mere fact, if it is a fact, that defendant personally, honestly, but mistakenly, believed that he would be able to go home after the interview[1] does not render his waiver of his right to counsel invalid in the absence of any evidence demonstrating that he was induced by the police to harbor this belief.

---

[1]Toward the end of the interview, Detective Pietrantoni informed defendant: "When you walked in the door with your parents, you were going to jail." Defendant stated surprisedly, "Do you mean I'm going to stay here?"

"*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." (*Colorado* v. *Connelly, supra,* 479 U.S. at p. __ [93 L.Ed.2d at p. 487].) We simply cannot conclude that there is evidence of government coercion in this case.

 We note additionally that Detective Pietrantoni's failure to tell defendant that free public counsel could be provided within an hour did not nullify defendant's waiver. In accordance with *Miranda,* defendant was advised of his right to counsel and advised that he would be provided with an attorney free of charge if he could not afford one.

"The court in *Miranda* held that if a defendant 'indicates *in any manner* and at any state of the process that he wishes to consult with an attorney before speaking there can be no questioning.' (*Miranda* v. *Arizona, supra,* 384 U.S. at pp. 444-445 . . . .) This holding has been construed by California courts to mean that 'a suspect may invoke his right to silence by *any words or conduct reasonably inconsistent* with a present willingness to discuss his case freely and completely.' (*People* v. *Duran* (1983) 140 Cal.App.3d 485, 492 [189 Cal.Rptr. 595] [cert. den. *Duran* v. *California* (1983) 464 U.S. 991 (78 L.Ed.2d 679, 104 S.Ct. 481)] (italics added), citing *People* v. *Burton* (1971) 6 Cal.3d 375, 382 [99 Cal.Rptr. 1, 491 P.2d 793].)" (*People* v. *Russo* (1983) 148 Cal.App.3d 1172, 1176 [196 Cal.Rptr. 466].)

 Any ambiguity as to whether a person intended to invoke his or her *Miranda* rights is to be resolved in favor of the defendant as an invocation of the right to counsel. (*People* v. *Hinds, supra,* 154 Cal.App.3d 222, 235; *People* v. *Duran, supra,* 140 Cal.App.3d 485, 492.)

When Detective Pietrantoni asked defendant if he wished to give up the right to speak to an attorney and have him present during questioning, defendant queried, "What do you mean by that now?"

Defendant contends that this response was ambiguous and hence should be construed as an invocation by him of his right to counsel. We disagree. Defendant's question "What do you mean by that now?" was not reasonably inconsistent with a willingness to discuss his case freely and completely and hence not an invocation of his right to counsel. It was simply a request by defendant for clarification.

██ ██ "It is well settled that a confession is involuntary and therefore inadmissible if it was elicited by any promise of benefit or leniency whether expressed or implied. [Citations.] However, mere advice or exhortation by the police that it would be better for the accused to tell the truth when unac-

companied by either a threat or a promise does not render a subsequent confession involuntary. [Citation.] The distinction that is to be drawn between permissible police conduct on the one hand and conduct deemed to have induced an involuntary statement on the other 'does not depend upon the bare language of inducement but rather upon the nature of the benefit to be derived by a defendant if he speaks the truth as represented by the police.' [Citation.] Thus, '[w]hen the benefit pointed out by the police to a suspect is merely that which flows naturally from a truthful and honest course of conduct,' the subsequent statement will not be considered involuntarily made. [Citation.] On the other hand, 'if . . . the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible. . . .' [Citations.]" (*People* v. *Jimenez, supra,* 21 Cal.3d at pp. 611-612.)

 The record in this case discloses no express or implied promises of leniency or benefit. Detective Pietrantoni's representation at the outset of the interview to the effect that an interview was his way of "getting this thing straightened out" did not render defendant's statement involuntary and inadmissible. Said representation was no more than a "mere exhortation to tell the truth." (*People* v. *Hinds,* supra, 154 Cal.App.3d at p. 238.)

At one point, when defendant was seeking clarification of his right to counsel, Detective Pietrantoni told him, "I'm not allowed to tell you that you don't need a lawyer." Selectively taking this explanation wholly out of context, defendant asserts that this statement when read in conjunction with Detective Pietrantoni's statement regarding straightening out the situation "constituted an implied advisement that the defendant's hope of 'straightening-out' the killing (resolving the announced police suspicion) depended on his willingess to talk without consulting counsel." We reject as meritless defendant's assertion that he was misled into making a statement.

 For the first time on appeal, defendant contends that Detective Pietrantoni's "affirmative act of isolating the immature defendant from his parents" precludes the sustaining of the trial court's finding of a voluntary waiver of the right to counsel. In so contending, defendant relies on the principle first espoused in *People* v. *Burton* (1971) 6 Cal.3d 375, 383-384 [99 Cal.Rptr. 1, 491 P.2d 793], and reaffirmed in *People* v. *Rivera* (1985) 41 Cal.3d 388, 394 [221 Cal.Rptr. 562, 710 P.2d 362].

 " '[W]hen . . . a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, *must, in the absence*

*of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege.* The police must cease custodial interrogation immediately upon exercise of the privilege. . . .' " (*People* v. *Rivera, supra,* 41 Cal.3d at p. 394, quoting *People* v. *Burton, supra,* 6 Cal.3d at pp. 383-384.)

 First of all, defendant has failed to direct our attention to any evidence in the record regarding his maturity or lack thereof. Second, and most importantly, although one or both of defendant's parents accompanied him to the police station and sat in the detective's lobby during the interview, there is no evidence that defendant asked to speak with his parents or either of them prior to or during the interview. Since defendant made no such request neither *Burton* nor *Rivera* is of potential aid to defendant. We therefore need not decide if these cases are applicable to a defendant, such as the one in this case, who was age 18 years and 10 months at the time of the crime and the interview and therefore past the age of minority.

We do conclude that the mere fact that defendant's parents accompanied him to the police station did not by itself amount to an invocation by defendant of his privilege against self-incrimination or his right to counsel under *Miranda.* Defendant's assertion to the contrary is meritless and is inconsistent with his admission that he went to the police station for the expressed purpose of telling the police his side of the story.

 We conclude under the totality of the circumstances that the prosecution proved beyond a reasonable doubt that defendant knowingly, intelligently and voluntarily waived his right to counsel.

The judgment is affirmed.

Woods, P. J., and Arguelles, J., concurred.

A petition for a rehearing was denied March 17, 1987, and the opinion was modified to read as printed above.