[No. A045382. First Dist., Div. Two. June 29, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ACE LEROY PORTER, Defendant and Appellant.

**COUNSEL**

David J. Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENSON, J.**—Defendant Ace Leroy Porter appeals his conviction of two counts of first degree burglary (Pen. Code, § 459), one count of auto theft (Veh. Code, § 10851), and one prior prison term allegation (Pen. Code, § 667.5, subd. (b)). Defendant argues the trial court committed reversible error by admitting his confession, since it was improperly obtained after he invoked his right to remain silent under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. We agree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

About 10 p.m. on August 11, 1988, Jean Wright discovered someone had ransacked her apartment at 675 Summerfield Road in Santa Rosa. About

$20 was missing from her purse and a box containing cash was missing from the apartment. A lug wrench had been left on Wright's dresser. A sliding glass door was off its tracks.

On the morning of August 12, 1988, Mary Ann Lindsay noticed the rear gate and a sliding glass door were open at Lawrence Ross's apartment at 603 Summerfield Road, one-half block from Jean Wright's apartment. She reported it to a gardener, who discovered the apartment ransacked and Ross's car missing from its designated parking space.[1]

On August 10, defendant and Eric Waltman rode a freight train from Oregon to California. They spent the night in Santa Rosa with Eric's sister, Carla Waltman. When defendant arrived he did not have a car, but when he left Santa Rosa the evening of August 11, he did. Suspicious, Carla Waltman recorded the car's license number, which matched Lawrence Ross's vehicle. She later contacted the police.

Defendant's fingerprints were found on a jewelry box inside Lawrence Ross's apartment. His fingerprints and palm prints were found outside a tampered window at Jean Wright's apartment. Defendant's palm prints were also found on a window of Ross's car, which was recovered in Klamath Falls, Oregon, where defendant was arrested. No lug wrench was found in Ross's car.

At trial, defendant objected *in limine* on *Miranda* grounds to the introduction of a taped confession he had given to police officers. After holding an evidentiary hearing outside the presence of the jury, the trial court ruled defendant's confession admissible. A redacted version of the tape was then played for the jury.

Defendant presented no evidence. The jury found defendant guilty on all three counts.

## DISCUSSION

### 1. Admissibility of the Confession

The day after defendant's arrest, Santa Rosa Police Department Detectives Brian Davis and Dave Gorman interviewed him in the county jail in Klamath Falls, Oregon. They recorded the interview with a concealed tape

---

[1] Lawrence Ross, an elderly man, was found in his bedroom when the burglary was discovered, dead of a heart attack. While the case was initially investigated as a homicide, defendant was not ultimately charged with that crime.

recorder. After obtaining background information, Detective Davis read defendant his *Miranda* rights and asked if he understood those rights and wished to talk with the officers. Defendant responded, "sure." The following exchange then took place:

"D[avis]: Do, do you know anything about ah, about this burglary I'm talking about?

"[Defendant]: Well I know about the car.

"D[avis]: Okay.

"[Defendant]: 'Cause I obviously drove it up here. Um, ah, yeah I know about the burglary, but I'm not gonna say any more than' that.

"D[avis]: Okay.

"[Gorman]: How 'bout, how 'bout the car, ah, where's the car at now, do you know?"

The interrogation then continued concerning the car and defendant's whereabouts before the crimes. When the detectives asked how he ended up with the car, defendant responded as follows:

"[Defendant]: Ah . . . am I gonna be extradited back to California or what?

"D[avis]: For the burglary and auto theft, yeah.

"[Defendant]: Okay, well I think I'll just save it for when I get there and . . . 'cause I wanna decide what I want to do."

Detective Davis then resumed his questions and defendant continued answering during the approximately one hour interview. Defendant ultimately confessed to the auto theft and both burglaries.

At the end of the interview, Detective Davis explained that when someone dies during the course of a burglary it is first degree murder. Defendant responded that he did not know that and said, "I got to talk to a lawyer." At this, Detective Davis stopped the interview, saying if defendant wanted to talk to them further he would have to initiate the discussion.

■ Defendant now asserts that by stating he would say no more than that he knew about the burglary and the car, and that he would "save it"

for when he was extradited to California, he was invoking his right to remain silent. Accordingly, he urges, the further questioning violated his *Miranda* rights and rendered his later confession inadmissible.

■ Under *Miranda*, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 723]; *People* v. *Fioritto* (1968) 68 Cal.2d 714, 718 [68 Cal.Rptr. 817, 441 P.2d 625].) ■ A desire to invoke that right can be expressed by words or conduct inconsistent with any willingness to discuss the case freely and completely. (*In re Joe. R* (1980) 27 Cal.3d 496, 515 [165 Cal.Rptr. 837 [612 P.2d 927]; *People* v. *Randall* (1970) 1 Cal.3d 948, 956 [464 P.2d 114].) Whether the defendant invoked the right to remain silent is a question of fact based on the totality of the circumstances. (*People* v. *Hayes* (1985) 38 Cal.3d 780, 784, 699 P.2d 1259]; *People* v. *Duren* (1973) 9 Cal.3d 218, 238 [107 Cal.Rptr. 157 [507 P.2d 1365].) On appeal, we independently review the record to determine whether defendant invoked that right. (*People* v. *Jennings* (1988) 46 Cal.3d 963, 979 [251 Cal.Rptr. 278, 760 P.2d 475].)

■ In this case, after admitting he knew about the car and the burglary at the outset of the interview, defendant said, "but I'm not gonna say any more than that." The People argue defendant was merely saying he was reluctant to talk about some portion of the crimes, but was not entirely refusing to discuss the case. (See *People* v. *Silva* (1988) 45 Cal.3d 604, 629-630 [247 Cal.Rptr. 573, 754 P.2d 1070].) Defendant's statement might be construed as meaning he would talk about the car theft, but not the burglary. However, since made immediately after the first question about the crimes, it could just as easily mean defendant wished to end the interrogation after admitting he knew something about the crimes.

The second statement is even more troubling. After a series of relatively innocuous questions about defendant's whereabouts before the crimes, Detective Davis asked defendant specifically how he ended up with the car. Apparently recognizing the seriousness of the question, defendant asked whether he would be extradited to California and was told he would, for auto theft and burglary. By responding that he thought he would "save it" for when he got to California because he wanted to decide what he would do, defendant was arguably saying he did not want to discuss the case freely and completely at that time.[2]

Given defendant's subsequent lengthy discussion with the officers, the statements in question are somewhat ambiguous. However, "[a]ny ambigu-

---

[2] Perhaps recognizing this possible meaning, the officers paused for some time after this statement, before resuming their questioning.

ity as to whether a person intended to invoke his or her *Miranda* rights is to be resolved in favor of the defendant as an invocation . . . ." *(People v. Green* (1987) 189 Cal.App.3d 685, 693 [234 Cal.Rptr. 497]; see *People v. Randall, supra,* 1 Cal.3d at p. 955 ["[t]o strictly limit the manner in which a suspect may assert the privilege, or to demand that it be invoked with unmistakable clarity (resolving any ambiguity against the defendant) would subvert *Miranda*'s prophylactic intent")].) Thus, courts have found invocations of *Miranda* rights where suspects have said " 'I think you ought to have somebody protecting me right now because I ain't too, oh here man . . .' " *(People v. Pack* (1988) 201 Cal.App.3d 679, 690 [248 Cal.Rptr. 240]), "I ain't got nothin' to say" *(People v. Carey* (1986) 183 Cal.App.3d 99, 105 [227 Cal.Rptr. 813]), where the defendant repeatedly asked to call his mother *(People v. Soto* (1984) 157 Cal.App.3d 694, 704 [204 Cal.Rptr. 204]), requested that a tape recorder be turned off *(People v. Hinds* (1984) 154 Cal.App.3d 222, 236 [201 Cal.Rptr. 104]), and said, " 'Tell me the truth, wouldn't it be best if I had an attorney with me?' " *(Hinds,* at p. 234.) Resolving any ambiguity in favor of defendant, we must find the statements amounted to invocations of his *Miranda* rights.

The cases relied upon by the People are distinguishable. In *People v. Silva, supra,* 45 Cal.3d at page 630, the defendant's statement "I really don't want to talk about that," when read in context, referred only to one question and not to the interrogation as a whole. Here, defendant's statements are more reasonably interpreted as referring to further interrogation generally, particularly the latter comment about "saving it" for after he was extradited to California.

In *People v. Jennings, supra,* 46 Cal.3d at page 979, the defendant's statements that he was not going to talk any more were properly interpreted as meaning he was angry at, and would no longer speak to, one of the interrogating officers, but that he would continue talking to the other. From our review of the taped confession, no similar argument can be made in this case.

In *People v. Hayes, supra,* 38 Cal.3d 780, the defendant freely confessed his crime, but later questioned whether he had to discuss the details. Emphasizing the prior full confession, the court concluded that when read in context, the statement merely meant that while willing to confess, the defendant was uncomfortable about going into details. *(Id.* at p. 786.) In the present case, defendant made the statements before confessing and they were not directed merely at the details of the crimes.

Finally, in *In re Joe R., supra,* 27 Cal.3d 496, the defendant denied guilt and gave exculpatory statements to the police. He then said that was all he

had to say. Given his previous claim of innocence, the court concluded defendant merely meant he would stick by his story. (*Id.* at p. 516.) Here, by contrast, defendant said nothing one way or the other about his involvement in the crimes before expressing his reluctance to talk further. He thus had no story he could have been "sticking with."

In finding defendant did not invoke his *Miranda* rights early in the interrogation, the trial court contrasted the initial statements with defendant's later unequivocal demand to see a lawyer. However, the fact defendant understood his rights and asserted them more clearly at the end of the interrogation does not mean his earlier, less clear efforts to end the questioning can be ignored. Interrogation must cease as soon as the suspect indicates *in any manner* that he wishes to remain silent. (*Miranda* v. *Arizona, supra,* 384 U.S. at pp. 473-474 [16 L.Ed.2d at p. 723].)

Since the officers did not "scrupulously" honor defendant's requests to terminate the interrogation, the confession elicited in violation of *Miranda* was inadmissible. (*People* v. *Boyer* (1989) 48 Cal.3d 247, 271 [256 Cal.Rptr. 96, 768 P.2d 610].)

## 2.  *The Reversible Per Se Standard*

■   California has long followed the rule that "the improper introduction of a *confession* is considered reversible per se [citations], whereas wrongful introduction of an *admission* is deemed prejudicial unless the People show beyond a reasonable doubt that the error complained of did not contribute to the verdict." (*People* v. *McClary* (1977) 20 Cal.3d 218, 230 [142 Cal.Rptr. 163, 571 P.2d 620], italics in original.)

However, the supreme court in dicta recently questioned the "reversible per se" rule, stating that "if a wrongfully introduced confession is invalid only for Fourth Amendment or prophylactic *Miranda* reasons, harmless-error analysis may be appropriate." (*People* v. *Boyer, supra,* 48 Cal.3d 247, 279-280, fn. 23; see also, *People* v. *Morris* (1987) 192 Cal.App.3d 380, 392, fn. 5 [237 Cal.Rptr. 402].) The court noted that in *Rose* v. *Clark* (1986) 478 U.S. 570, 577-579 [92 L.Ed.2d 460, 470-471, 106 S.Ct. 3101], the United States Supreme Court emphasized that even constitutional errors are only subject to a "reversible per se" standard where they render the entire trial fundamentally unfair (e.g., introduction of coerced confessions, complete denial of the right to counsel, or adjudication by a biased judge). (*Boyer, supra,* 48 Cal.3d at pp. 279-280.) "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis . . . ." (*Rose, supra,* 478 U.S. at p. 579 [92 L.Ed.2d at p. 471].)

While suggesting a need at least to reexamine the reversible per se standard for wrongfully introduced confessions the *Boyer* court nevertheless declined to determine whether defendant's inculpatory statement was an admission or confession and held the improper introduction of defendant's statement was not harmless beyond a reasonable doubt under the *Chapman* v. *California* (1967) 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065] standard.[3] (*Boyer, supra,* 48 Cal.3d at p. 279.)

Despite the implication raised by footnote 23 of the *Boyer* decision, we are in no position to challenge the line of California Supreme Court decisions[4] applying the reversible per se standard to improperly introduced confessions. Those decisions remain binding on this court until overruled by our Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455.)

■ In contrast to the California reversible per se rule, federal courts apply the harmless error standard to both improperly introduced admissions and confessions. (*U. S.* v. *Wolf* (6th Cir. 1989) 879 F.2d 1320, 1323-1325; *Christopher* v. *State of Fla.* (11th Cir. 1987) 824 F.2d 836, 846-847; *United States* v. *Hernandez* (5th Cir. 1978) 574 F.2d 1362, 1372; see also *Satterwhite* v. *Texas* (1988) 486 U.S. 249, 257-258 [100 L.Ed.2d 284, 294-295, 108 S.Ct. 1792], [harmless error applies to admission of psychiatric testimony obtained in violation of Sixth Amendment right to consult counsel before submitting to psychiatric exam]; *Milton* v. *Wainwright* (1972) 407 U.S. 371, 372-373, 378 [33 L.Ed.2d 1, 3-4, 92 S.Ct. 2174] [admission of confession obtained in violation of *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199] subject to *Chapman* analysis].)

We nevertheless may not ignore the state decisions and apply the federal harmless error standard. ■ Generally, decisions of the United States Supreme Court on federal questions are binding on this court. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 779, p. 750; see *Chapman* v. *California, supra,* 386 U.S. at pp. 21, 24 [17 L.Ed.2d at pp. 710-711] [since California's "miscarriage of justice" harmless error standard not as stringent as necessary, California bound to follow federal law and raise its harmless

---

[3] Recently, the supreme court again cited the reversible per se standard. In *People* v. *Thompson* (1990) 50 Cal.3d 134 [758 P.2d 857], the court found defendant made incriminating admissions which were properly admitted at trial. (*Id*. at pp. 159-170.) In dicta, however, the court recited the rule that harmless error analysis only applies to improperly admitted admissions, while confessions require automatic reversal. (*Id*. at p. 162, fn. 10.) The court did not acknowledge it had questioned the reversible per se rule in *Boyer*.

[4] See *People* v. *Mattson* (1984) 37 Cal.3d 85, 91 [207 Cal.Rptr. 278, 688 P.2d 887]; *People* v. *Smith* (1983) 34 Cal.3d 251, 269 [193 Cal.Rptr. 692, 667 P.2d 149]; *People* v. *Hogan* (1982) 31 Cal.3d 815, 844 [183 Cal.Rptr. 817, 647 P.2d 93]; *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 756 [175 Cal.Rptr. 738, 631 P.2d 446]; *People* v. *Randall, supra,* 1 Cal.3d at page 958.

error standard to that of *Chapman*].) Yet the question in the present case is whether California's reversible per se standard, which is *more* stringent than called for in *Chapman*, must be brought in line with federal decisions. States are, however, generally free to afford criminal defendants greater constitutional safeguards than the minimum standards enunciated by the Supreme Court.

■     Moreover, the "Truth-In-Evidence" provisions of Proposition 8 do not require application of the less stringent federal harmless error standard. That enactment provides in relevant part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, . . . whether heard in juvenile or adult court . . . ." (Cal. Const., art. I, § 28, subd. (d).)

Proposition 8 has been construed as meaning the state cannot provide greater remedies to exclude unlawfully obtained evidence than are available under federal law. (See *People v. Markham* (1989) 49 Cal.3d 63, 65, 71 [260 Cal.Rptr. 273 [775 P.2d 1042] [abrogated prior California rule imposing a stricter standard of proof on the voluntariness of confessions than that used by the federal courts]; *People v. O'Sullivan* (1990) 217 Cal.App.3d 237, 245 [265 Cal.Rptr. 784] [since enactment of Proposition 8, "the courts have consistently held that state cases applying the exclusionary rule in circumstances where federal law would not compel exclusion are no longer valid"].)

However, Proposition 8 deals only with the admissibility of evidence. It does not address whether California's standard for reversing convictions tainted by the introduction of such evidence can exceed the federal standard. The Supreme Court has, in fact, continued to recognize the reversible per se rule in a number of post-Proposition 8 decisions. (See *People v. Thompson, supra,* 50 Cal.3d at p. 162, fn. 10; *People v. Mattson, supra,* 37 Cal.3d at p. 91; *People v. Smith, supra,* 34 Cal.3d at p. 269; *People v. Hogan, supra,* 31 Cal.3d at p. 844.)

If the *Chapman* harmless error standard could be applied in the present case, we would have no difficulty upholding this conviction based upon the overwhelming evidence of defendant's guilt (other than the confession) which was properly before the jury. There was evidence of forced entry into both residences, of ransacking, and that items had been taken. A witness testified defendant was in Santa Rosa when the crimes occurred and that he arrived without a car but left with the stolen car. The car was found in Klamath Falls, where defendant was arrested. His fingerprints were found

in the car. There was evidence the lug wrench was missing from the trunk of the Ross car, and that a lug wrench had been left inside the Wright residence. Defendant's fingerprints were found on a jewelry box in the Ross residence and at the point of forced entry into the Wright residence. Finally, defendant admitted to the police (after he initially agreed to talk but before he invoked his *Miranda* rights) that he knew about the car since he drove it up from Santa Rosa and that he knew about the burglary.

Setting aside defendant's confession, the remaining evidence of guilt is undeniably compelling and would readily support finding harmless error. (See *People* v. *Turner* (1984) 37 Cal.3d 302, 308-311, 316-319 [208 Cal.Rptr. 196, 690 P.2d 669], overruled on another point in *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1149 [240 Cal.Rptr. 585, 742 P.2d 1306]; *People* v. *Engert* (1987) 193 Cal.App.3d 1518 [239 Cal.Rptr. 169].) However, under the prevailing state of California law, we have no choice but to automatically reverse defendant's conviction.[5]

### DISPOSITION

The judgment is reversed.

Smith, Acting P. J., and Peterson, J., concurred.

Respondent's petition for review by the Supreme Court was denied September 26, 1990.

---

[5] We need not reach the remaining issues raised on appeal. Based on certain statements in his confession that he was drinking beer and "doing some cocaine" on the day of the crimes, defendant claims the court improperly refused his voluntary intoxication instruction. However, since we have ruled defendant's confession inadmissible, the point is moot because there was no other evidence defendant was intoxicated. Defendant's remaining arguments deal exclusively with sentencing issues, which would be inappropriate to address since we reverse defendant's conviction.