[Crim. No. 23556. First Dist., Div. Five. Nov. 18, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JASON JOHN RUSSO, Defendant and Appellant.

Counsel

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Neil Rosenbaum, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ann K. Jensen and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

KING, J.—In this case we hold that a waiver of *Miranda* rights is invalid when given by a suspect after being told by the police, as part of the reading of his *Miranda* rights, that if he did not commit the crime he did not need a lawyer.

Jason John Russo was charged with murder (Pen. Code, § 187) with use of a deadly weapon (Pen. Code, § 12022, subd. (b)). A jury found him guilty of second degree murder and found the use allegation to be true. We reverse the judgment.

The evidence at trial showed that on February 25, 1981, as part of a ruckus between two groups of young people, Russo stabbed Ronald Puterbaugh, who bled to death. At trial Russo's defense was diminished capacity based upon intoxication.

In early March of 1981, Santa Rosa Police Detective James Carlson received an anonymous tip that Russo had stabbed Puterbaugh. Carlson interviewed him on March 4. He again interviewed Russo on March 6, at the Santa Rosa police station, at which time Russo admitted being present when Puterbaugh was stabbed but said that he had taken no part in the incident. Russo also told Carlson he had consumed no alcohol that night. Stephanie Franco, Russo's girlfriend, testified at the preliminary hearing that Russo had drunk nothing alcoholic that night.

At trial Ms. Franco testified she saw Russo drink three regular glasses full of tequila before the stabbing occurred, and that he was drunk. She claimed that she had lied at the preliminary hearing to conceal Russo's drinking from her mother. Detective Carlson testified on behalf of the pros-

ecution that Russo had told him during the March 6 interview that he had not been drinking that night.

Russo contends that his statement to Detective Carlson that he had not been drinking on the night of the homicide should have been excluded because it was the product of a violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. He argues that before making this statement he had invoked his right to counsel so that questioning should have ceased, and that his subsequent waiver of *Miranda* rights was not a knowing and intelligent waiver.

To fully consider these contentions, reference must be made to portions of the transcript of the recording of the March 6 interview.

It seems clear from the transcript of the interview that Detective Carlson, despite his denial at trial, must have indicated to Russo prior to the recording of the interview that Russo did not need a lawyer. At the very beginning of the interview when Detective Carlson first began to give Russo his rights, the transcript discloses the statement by Russo, "But you said I didn't need a lawyer." Detective Carlson then told Russo he wanted him to be aware of his rights and went on to say to Russo, "Okay, if you didn't do this, man, you got no, you got no problems. If you didn't do this, you don't need a lawyer, you know." Thereafter, when asked, having these rights in mind, whether he wished to talk to Carlson, Russo replied, "I don't know if I should have a lawyer here or what, . . ." From the transcript, two issues are presented on appeal: first, whether Russo invoked his right to counsel when he said, "I don't know if I should have a lawyer here or what . . . ;" second, whether any waiver of *Miranda* rights was nullified by Carlson's prior statement that "If you didn't do this, you don't need a lawyer, you know."

At the outset, however, respondent raises two procedural issues. The first pertains to the applicable standard of review on appeal. Respondent contends that the degree of deference owed trial court findings as to the validity of a *Miranda* waiver is "ill-defined," and urges this court to defer to the trial court's specific finding that Carlson did not attempt to "soften up" Russo and that Russo's reference to a lawyer at the outset of his interrogation was not a request for counsel. ■ The rule of deference, however, applies only to issues of fact where there is a conflict in the evidence. (E.g., *People* v. *Duren* (1973) 9 Cal.3d 218, 237 [107 Cal.Rptr. 157, 507 P.2d 1365].) Here the facts surrounding the March 6 interview are undisputed, as the interview was recorded. The consequent standard of review on appeal is well settled: "[T]his court must independently assess whether [Russo] knowingly and intelligently waived his rights. This degree of appellate scru-

tiny is required, since the facts in the record are essentially uncontradicted." (*People* v. *Diaz* (1983) 140 Cal.App.3d 813, 820 [189 Cal.Rptr. 784], citing *People* v. *Jiminez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].)

The second procedural issue raised by respondent pertains to the standard of proof below as to the effectiveness of a *Miranda* waiver. ■ The rule in California has been that the prosecutor must prove effectiveness of the waiver beyond a reasonable doubt. (*People* v. *Jackson* (1980) 28 Cal.3d 264 [168 Cal.Rptr. 603, 618 P.2d 149], cert. den. (1980) 450 U.S. 1035 [68 L.Ed.2d 232, 101 S.Ct. 1750]; *People* v. *Jiminez, supra,* 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672].) The federal rule is that voluntariness may be proved by a preponderance of the evidence. (*Lego* v. *Twomey* (1972) 404 U.S. 477, 489 [30 L.Ed.2d 618, 627, 92 S.Ct. 619].) We must apply the California rule since the stabbing took place prior to the effective date of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)). (See *People* v. *Smith* (1983) 34 Cal.3d 251 [193 Cal.Rptr. 692, 667 P.2d 149].)

■ Russo contends that he invoked his right to counsel when he said, "I don't know if I should have a lawyer here or what . . . ." If he did, all questioning should have ceased until an attorney was present. (*Edwards* v. *Arizona* (1981) 451 U.S. 477, 485 [68 L.Ed.2d 378, 386, 101 S.Ct. 1880].)

The court in *Miranda* held that if a defendant "indicates *in any manner* and at any state of the process that he wishes to consult with an attorney before speaking there can be no questioning." (*Miranda* v. *Arizona, supra,* 384 U.S. at pp. 444-445 [16 L.Ed.2d at pp. 706-707]; italics added.) ■ This holding has been construed by California courts to mean that "a suspect may invoke his right to silence by *any words or conduct reasonably inconsistent* with a present willingness to discuss his case freely and completely." (*People* v. *Duran* (1983) 140 Cal.App.3d 485, 492 [189 Cal.Rptr. 595] (italics added), citing *People* v. *Burton* (1971) 6 Cal.3d 375, 382 [99 Cal.Rptr. 1, 491 P.2d 793].) Thus courts have found invocations of the right to counsel where suspects have stated, " 'Do you think we need an attorney?' " or " 'I guess we need a lawyer' " (*People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 736 [125 Cal.Rptr. 798, 542 P.2d 1390], cert. den. (1976) 429 U.S. 816 [50 L.Ed.2d 76, 97 S.Ct. 58]), " 'Well, maybe I should talk to my attorney' " (*People* v. *Munoz* (1978) 83 Cal.App.3d 993, 995 [148 Cal.Rptr. 165]), and " 'Well then I think it's better that I have an attorney here' " and " '[h]ave you got an attorney right here present, close?' " (*People* v. *Duran, supra,* 140 Cal.App.3d at pp. 490-492.)

Respondent challenges the notion that any ambiguity surrounding the assertion of *Miranda* rights must be resolved in favor of the suspect, citing

the holding in *Taylor* v. *United States* (D.C.App. 1977) 380 A.2d 989, 994, that the trial court must evaluate equivocal acts to determine whether the right to counsel was invoked. But California decisions have construed *Miranda* differently: "*Ambiguous statements are to be construed as invocations . . . .* If courts were to construe ambiguous references to attorneys as something other than invocations of a suspect's right to remain silent, experienced criminals would get attorneys and not incriminate themselves, while less experienced offenders would be 'trapped' by failing to use the precise words of invocation." (*People* v. *Duran, supra,* 140 Cal.App.3d at p. 492 (italics added), citing *People* v. *Randall* (1970) 1 Cal.3d 948, 955 [83 Cal.Rptr. 658, 464 P.2d 114].) ■ Under this approach questioning should have ceased when Russo stated, "I don't know if I should have a lawyer here or what . . .," since this statement was reasonably inconsistent with a present willingness to discuss the case freely and completely.

Respondent argues that further questioning was permissible under *People* v. *Turnage* (1975) 45 Cal.App.3d 201, 211 [119 Cal.Rptr. 237], which held that the *Miranda* rule "*permits clarifying questions* with regard to the individual's comprehension of his constitutional rights or the waiver of them . . . ." (Italics in original.) The court in *Turnage* permitted further questioning where it discerned "a patent ambiguity with respect to both appellant's understanding of his rights and his exercise of the available privilege." (*Id.,* at p. 212.) The dividing line between a "patent ambiguity" permitting clarifying questions under *Turnage* and "ambiguous statements" that are to be construed as invocations under *Duran* would seem to be rather nebulous, but the factual situations in *Zolnay, Munoz,* and *Duran, supra,* suggest that the present case falls on the invocation side of that dividing line.

■ More importantly, regardless of whether Russo invoked his right to counsel, any waiver of *Miranda* rights was, under the California reasonable doubt standard, rendered invalid by Detective Carlson's statement at the outset of the interview that, "If you didn't do this, you don't need a lawyer, you know." A valid waiver must be knowing and intelligent. (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 475 [16 L.Ed.2d at p. 724].) After Carlson made the offending statement, Russo repeatedly voiced confusion regarding the right to and need for counsel. Carlson restated and explained the right, but he never retracted the statement that if innocent Russo needed no counsel. The record demonstrates that Carlson misled Russo to believe that his invocation of the right to counsel would be construed as a tacit admission of guilt. Russo was left with little choice but to waive the right to counsel in order, in his mind, to maintain the appearance of innocence. On these facts there could have been no knowing and intelligent waiver.

Furthermore, as a matter of public policy such statements by interrogating officers cannot be permitted, as they may induce an unsophisticated suspect to give up an important constitutional right based on the faulty premise that only the guilty need counsel. The innocent person has at least as great a need, and most certainly an equal right, to counsel as the guilty. Such statements patently violate the spirit of *Miranda,* as well as common notions of fairness. They have no valid place at any stage of criminal proceedings.

Respondent argues that Russo's finally invoking his right to counsel at the end of the interview demonstrates that he was not misled when told earlier that he did not need counsel if he was innocent. But Russo invoked the right to counsel only after it became apparent that he was being accused of the homicide and would no longer benefit from the suggested inference of innocence from waiver of the right to counsel. If anything, his invocation at this point in the interview suggests he would have unequivocally invoked the right to counsel earlier if not misinformed that only the guilty need counsel.

■ Because the error was of federal constitutional dimensions, the judgment must be reversed unless the error was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].) The error cannot be so characterized: introduction of Russo's statement that he had not been drinking on the night of the homicide clearly undermined his diminished capacity defense. Under *Chapman* the error was prejudicial.

The judgment is reversed.

Low, P. J., and Haning, J., concurred.