183 Cal.App.3d 99 (1986)
227 Cal. Rptr. 813
THE PEOPLE, Plaintiff and Respondent,
v.
LEON CARNAL CAREY, Defendant and Appellant.
Docket No. B017051.
Court of Appeals of California, Second District, Division Six.
July 7, 1986.
*101 COUNSEL
F. Elaine Easley, under appointment by the Court of Appeal, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, and Donald E. deNicola and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
YEGAN, J.[*]
(1a) In this case, we hold that the police may not "clarify" unambiguous and repeated refusals to say anything after a custodial *102 suspect has been advised of and indicates that he understands his constitutional rights pursuant to Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].
Leon Carnal Carey was convicted in a court trial of a plethora of serious offenses which resulted in a determinate state prison sentence of 25 years 8 months.[1] He appeals, contending: "The trial court erred in denying appellant's motion to suppress his confession." The contention is meritorious and the judgment must be reversed.[2]
(2) Over 20 years ago, our United States Supreme Court, in the landmark decision of Miranda v. Arizona, supra, 384 U.S. 436, said, "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." (At pp. 473-474 [16 L.Ed.2d at p. 723].) The court also indicated that where the person to be interrogated "... is indecisive in his request for counsel, there may be some question on whether he did or did not waive counsel. Situations of this kind must necessarily be left to the judgment of the interviewing Agent.... Because of the constitutional basis of the right, however, the standard for waiver is *103 necessarily high. And, of course, the ultimate responsibility for resolving this constitutional question lies with the courts." (At pp. 485-486, fn. 55 [16 L.Ed.2d at p. 730].) This latter rule has spawned a growing body of California law permitting the police to "clarify" whether or not a suspect comprehends or waives his Miranda rights. (E.g., People v. Turnage (1975) 45 Cal. App.3d 201, 211 [119 Cal. Rptr. 237]; People v. Maynarich (1978) 83 Cal. App.3d 476, 481 [147 Cal. Rptr. 823]; In re Brian W. (1981) 125 Cal. App.3d 590, 598-600 [178 Cal. Rptr. 159]; People v. Russo (1983) 148 Cal. App.3d 1172, 1177 [196 Cal. Rptr. 466]; People v. Bestelmeyer (1985) 166 Cal. App.3d 520, 526-528 [212 Cal. Rptr. 605].) (3) This principle is perhaps best phrased as follows: "[T]he case law draws a sensible distinction between clarification and interrogation. On the one hand, it permits clarifying questions with regard to the individual's comprehension of his constitutional rights or the waiver of them; on the other hand, it prohibits substantive questions which portend to develop the facts under investigation...." (People v. Turnage, supra, at p. 211, italics in original.)
(1b) The "clarification rule," however, requires ambiguity as a precedent which is not here present.[3] In the instant case, within minutes of the commission of the offense, appellant was taken into custody and advised by Detective Neil Sharpe of the Santa Barbara Police Department that he was under arrest for robbery. Detective Sharpe detailed the specifics of the robbery, told appellant that he wanted to hear his explanation, and advised him of the salient rights pursuant to Miranda v. Arizona, supra. When asked whether he understood each of his rights, appellant said, "Yes." The following then transpired:
DETECTIVE SHARPE: "Having these rights in mind, do you wish to talk to me now?"
APPELLANT: "I ain't got nothin' to say."
DETECTIVE SHARPE: "Is that, you don't know what to say or you'll answer some questions of mine?"
*104 APPELLANT: "I ain't got nothin' to say at all."
DETECTIVE SHARPE: "I don't understand, I mean, saying you have nothing to say."
APPELLANT: "I ain't got nothin' to say, nothin', nothin'."
DETECTIVE SHARPE: "You don't want to say anything?"
APPELLANT: "I ain't got nothin' to say."
DETECTIVE SHARPE: "How about if I asked you questions? Would you have some response to those?"
APPELLANT: "It all depends on the questions."
DETECTIVE SHARPE: "Okay, then why don't you answer the questions you can and the ones you can't, allright? [Sic.]"
Without any express waiver of his Miranda rights, Detective Sharpe commenced his substantive interrogation which culminated in appellant virtually confessing to all of the charged offenses.[4]
Although the trial court expressly determined to the contrary on the basis of the "clarification" rule, it seems difficult, if not impossible, to square appellant's emphatic unwillingness to say anything with other than an invocation of the right to remain silent. (4) "Where [as here] there is no conflict in the evidence, there is no requirement that the reviewing court view [a Miranda ruling] in the light most favorable to upholding the trial court's determination. [Citations.]" (People v. Duren (1973) 9 Cal.3d 218, 238 [107 Cal. Rptr. 157, 507 P.2d 1365].) In this case, the trial court's ruling was erroneous as a matter of law; and were we to sanction the police procedures here challenged, the "clarification" exception would swallow the Miranda rule.
(1c) We do not disparage appellant for his economy of words or lack of eloquence. Although he was no stranger to the justice system, appellant was not chargeable with the duty of uttering the talismanic incantation: "I hereby invoke my constitutional rights pursuant to the United States Supreme *105 Court decision in Miranda v. Arizona." There is no such requirement and pursuant to Miranda v. Arizona, and its progeny (e.g., People v. Hayes (1985) 38 Cal.3d 780, 784 [214 Cal. Rptr. 652, 699 P.2d 1259]), it is well settled the "`... desire to halt the interrogation may be indicated in a variety of ways....'" (Ibid.) As aptly phrased by Presiding Justice Lillie, "[i]s there more defendant must say to invoke his privilege to remain silent than `No' when asked to explain or clarify or continue the conversation?" (People v. Marshall (1974) 41 Cal. App.3d 129, 134 [115 Cal. Rptr. 821].) We similarly ask, how many times must a defendant exclaim, "I ain't got nothin' to say" to invoke his privilege to remain silent?
Here, appellant's quadruple invocation of the right to remain silent was consistent with the "in any manner" test promulgated by the United States and California Supreme Courts. (5) Phrased otherwise, "[a]ny words or conduct which `reasonably appears inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police at that time [fn. omitted]' [citation] must be held to amount to an invocation of the Fifth Amendment privilege." (People v. Burton (1971) 6 Cal.3d 375, 382 [99 Cal. Rptr. 1, 491 P.2d 793], italics in original; see also, e.g., People v. Russo, supra, 148 Cal. App.3d 1172, 1176.) (1d) Questioning should have ceased when appellant said, "I ain't got nothin' to say ..." the first time. A fourfold repetition not only reasonably appears inconsistent with a present willingness on the part of appellant to discuss his case freely and completely with Detective Sharpe at that time, it is only inconsistent therewith.[5]
(6) These constitutional principles have the United States Supreme Court's imprimatur in Smith v. Illinois (1984) 469 U.S. 91, 98 [83 L.Ed.2d 488, 495, 105 S.Ct. 490] where, in the context of whether there was an invocation of the right to counsel vel non, the court indicated: "Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked. Invocation *106 and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together." (Italics added.) This holding is apposite to an invocation of the Fifth Amendment privilege and renders appellant's subsequent willingness to answer specific questions irrelevant on the issue of invocation. "[A]n accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked...." (Ibid.) "`No authority, and no logic, permits the interrogator to proceed ... on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he [did not wish] to speak....' [Citation.]" (Id., 469 U.S. at p. 99 [83 L.Ed.2d at p. 496].) This is exactly what Detective Sharpe did and is exactly what the police are not permitted to do.
The judgment is reversed.
Gilbert, Acting P.J., and Abbe, J., concurred.
Respondent's petition for review by the Supreme Court was denied October 23, 1986.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.
[1] Appellant was, in essence, a one-man crime wave in Santa Barbara between February and April of 1985. The crimes for which he was convicted are as follows: count I, attempted burglary of a residence; count II, receiving stolen property; count III, burglary of a residence; count IV, forcible rape; count V, forcible rape with a foreign object; count VI, forcible oral copulation; count VII, robbery in a dwelling; count X, felonious assault with infliction of great bodily injury; count XIII, robbery; count XIV, attempted burglary of a residence; count XV, grand theft from the person of another.
[2] "It is settled that the introduction of a confession obtained in violation of constitutional guarantees is prejudicial per se and that a conviction based on such a confession must be reversed. [Citation.]" (People v. Mattson (1984) 37 Cal.3d 85, 91 [207 Cal. Rptr. 278, 688 P.2d 887].) The People introduced appellant's statements which were full-blown confessions or admissions virtually tantamount thereto, as to all of the offenses for which he was convicted. We hasten to observe that even without the tape-recorded statements, People's exhibit No. 35, the prosecution may well be able to once again secure a conviction on one or more counts.

Paraphrased, the philosophical observations of Division Two of the Second Appellate District are here apposite: "`It should always be borne in mind that the constitutional proscription against [Fifth Amendment compelled disclosure], and the judicial rules promulgated in support thereof, are designed to protect the innocent citizen, not the criminal. It is true, of course, that only the guilty profit directly from the exclusionary rule. However, it is assumed that over the long run the law abiding members of society will benefit from that curtailment of excessive police conduct that it is hoped will result from the application of such rule. In essence, the criminal is but an unavoidable "third party beneficiary" of the compact effected between the governed and their government....'" (People v. Bellomo (1984) 157 Cal. App.3d 193, 197 [203 Cal. Rptr. 610], italics in original; People v. Lara (1980) 108 Cal. App.3d 237, 241 [166 Cal. Rptr. 475].)
[3] Our Supreme Court has said "[t]o strictly limit the manner in which a suspect may assert the privilege, or to demand that it be invoked with unmistakable clarity (resolving any ambiguity against the defendant) would subvert Miranda's prophylactic intent." (People v. Randall (1970) 1 Cal.3d 948, 955 [83 Cal. Rptr. 658, 464 P.2d 114].) "`Ambiguous statements are to be construed as invocations....'" (People v. Hinds (1984) 154 Cal. App.3d 222, 235 [201 Cal. Rptr. 104]; People v. Russo, supra, 148 Cal. App.3d 1172, 1177; People v. Duran (1983) 140 Cal. App.3d 485, 492 [189 Cal. Rptr. 595].) While People v. Turnage, supra, speaks in terms of "clarification" concerning comprehension or waiver of Miranda rights, it is conspicuously silent on invocation. We need not delve into this intellectual thicket since, as indicated, here there is no ambiguity to clarify.
[4] No transcript of the subject interrogation was introduced into evidence. We have, on our own motion, ordered the tape recordings transmitted to this court and have listened to them. (Cal. Rules of Court, rules 10(d) and 35(e).) We emphasize that our decision today is not based upon waiver principles.
[5] Detective Sharpe was emphatic about his perceived "clarification" duty. At the renewed hearing on the motion to exclude the confession, the following transpired:

"Q. [Defense counsel]. You did not understand what he meant when he said, `I got nothing to say'?
"A. [Detective Sharpe]. That's correct.
"Q. You didn't understand it the second time he said it?
"A. No.
"Q. And he might have said it a third or fourth time?
"A. I believe he said it a third time.
"Q. You didn't understand what he meant then?
"A. No."